Citation Nr: 1743988 
Decision Date: 09/18/17 Archive Date: 10/10/17

DOCKET NO. 12-31 413 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an increased rating for bilateral pes planus with chronic plantar fasciitis and right plantar spur, status post right plantar fasciectomy and left plantar fascia release with scars, currently evaluated as 30 percent disabling. 

2. Entitlement to an increased rating for a low back strain currently evaluated as 10 percent disabling. 


REPRESENTATION

Appellant represented by: Virginia Department of Veterans Services


ATTORNEY FOR THE BOARD

R. Ballard Jr., Associate Counsel


INTRODUCTION

The appellant is a Veteran who served in the Marine Corps from June 1975 to June 1979.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

The issue of entitlement to an increased rating for a low back strain currently evaluated as 10 percent disabling is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

For the rating period on appeal, the Veteran's bilateral pes planus with chronic plantar fasciitis and right plantar spur, status post right plantar fasciectomy and left plantar fascia release with scars has been manifested by subjective complaints of pain with prolonged standing and walking; objectively, the Veteran has marked pronation and extreme tenderness of plantar surfaces on both feet, but not severe spasm of the Achilles tendon on manipulation of one or both feet not improved by orthopedic shoes or appliances.


CONCLUSION OF LAW

The criteria for a rating in excess of 30 percent, for bilateral pes planus with chronic plantar fasciitis and right plantar spur, status post right plantar fasciectomy and left plantar fascia release with scars, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b); 38 C.F.R. §§ 3.102, 3.321, Diagnostic Code 5276.



REASONS AND BASES FOR FINDING AND CONCLUSION

Legal Criteria

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4 (2010). When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. Id. § 4.3. 

Further, a disability rating may require re-evaluation in accordance with changes in a Veteran's condition. It is thus essential in determining the level of current impairment that the disability is considered in the context of the entire recorded history. Id. § 4.1. Nevertheless, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The Board notes that staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Diagnostic Code (DC) 5276 provides for a 30 percent rating for severe bilateral acquired flatfoot, with objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, an indication of swelling on use, and characteristic callosities. 

A 50 percent evaluation is assigned for pronounced bilateral acquired flatfoot, with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the Achilles tendon on manipulation, not improved by orthopedic shoes or appliances. 


Factual Background

The Board notes that it has reviewed all of the evidence in the record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate, and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claims being decided.

Records show that during the Veteran's service in the Marine Corps from June 1975 to June 1979 he was diagnosed with pes planus and plantar fascial strain. 

In a July 2004 rating decision the Veteran was granted service connection for bilateral pes planus with chronic plantar fasciitis and right plantar spur status post right plantar fasciectomy (bilateral foot conditions), with an evaluation of 10 percent effective October 29, 1999. A temporary 100 percent evaluation was assigned from March 4, 2004 to May 1, 2004, following a right plantar fasciectomy. 

In a January 2010 rating decision the Veteran's disability rating for his service connected bilateral foot condition was increased to 30 percent disabling, effective October 23 2009. 

In a May 2010 rating decision the Veteran was assigned a temporary rating of 100 percent disabling for his bilateral foot conditions based on surgery, plantar fascia release, necessitating convalescence, effective April 23, 2010 to June 1, 2010. 

A May 2011 VA treatment record noted that the Veteran felt that "his feet are doing much better." In July 2011 the Veteran called VA and requested orthopedic shoes and records show replacement of "diabetic shoes" (the Veteran is diabetic). In his February 2012 statement, the Veteran said that a physical therapist (records in the virtual file) assessed his pain as level 3 and gave him shoe lift inserts. In September 2012 the Veteran reported right great toe pain and noted pain "when mowing the lawn and doing a lot of walking." In July 2012 he rated his foot pain as a 5/10 and sought treatment for right great toe pain which increased as he was doing "some walking for exercising."

In December 2016 the Veteran was afforded a VA medical examination for his bilateral foot conditions. The Veteran reported that the instep area of his feel always stay sore and that he has dull pain along the instep area when walking. He also stated that his feet are sore and ache in the bottom and middle when he stands on them too long. The examiner noted that the Veteran stated that he used over the counter gel type sole inserts in his shoes. 

The examiner noted that the Veteran was not wearing his inserts on the day of the examination. The examiner found that the Veteran had extreme tenderness in both feet and pain upon manipulation of the feet as well as on use of the feet. The examiner also found that the Veteran had pain and decreased longitudinal arch height of both feet on weight-bearing. The examiner also found that the Veteran had a marked deformity of both feet; specifically pronation of both feet. However, the examiner did not find marked inward displacement and severe spasm of the Achilles tendon on manipulation of the feet. Finally the examiner concluded that the Veteran's condition impacted his ability to perform occupational tasks. The examiner stated that due to his bilateral pes planus, he is unable to engage in tasks requiring prolonged standing or walking.

During the examination the Veteran stated that the inside of his feet "always stay sore" as he pointed to the bottom of feet in instep area. He described bilateral foot pain when walking; a dull pain along instep area that is relieved by sitting down. He avoids walking barefoot on hardwood floors due to the foot pain. Regarding flare ups, he stated "when I walk or do more one day, my feet hurt more the next morning. I roll my foot on a ball and massage them; then I do less on my feet." Finally he stated that due to bilateral foot pain he is unable to engage in prolonged standing or walking. 


Analysis

The Board acknowledges the Veteran's symptoms; however, the preponderance of the evidence is against a finding that the Veteran's symptoms more nearly approximate a 50 percent evaluation. First, the 2016 examination report is clear that the Veteran does not have one of the 50 percent criteria: marked inward displacement and severe spasm of the Achilles tendon on manipulation. In addition, the Veteran does use orthopedic shoes and appliances for foot symptom relief. The medical records also support this conclusion (that the criteria for a higher rating are not met) as they rate the Veteran's reported pain a 3 or a 5 out of 10 and indicate that he felt that his foot symptoms improved after his 2010 surgery.

The Board acknowledges that the Veteran has pronation and extreme tenderness; however, the evidence does not reflect severe spasm of the Achilles tendon on manipulation. There is also no indication that the Veteran's pain is not improved by his gel inserts. Thus, the Board finds that the Veteran's symptoms do not warrant a 50 percent rating for "pronounced" flatfoot. 

The Board has also taken the Veteran's statements into consideration. The Veteran is competent to report his symptoms of pain that he experiences with his feet. The Board also finds that these statements are credible, as they are consistent with the examiner's objective findings. However, the Board assigns very little probative weight to these statements due to the fact that pain is already considered within the 30 percent rating criteria and the statements do not describe the symptoms necessary to reach a 50 percent rating. His reports of pain at a 3 or a 5 does not equate to pronounced (more than severe) symptoms, nor do his reports in the medical records that his feet are doing "much better" since his 2010 surgery. 

The Board has considered whether there is any other applicable diagnostic code would warrant the Veteran a higher evaluation, but found that there is none. DC 5278 is not for application as the record indicates that the Veteran does not have a claw foot. DC 5282 is not for application as the record indicates that the Veteran does not have hammer toes. DC 5279 is not for application as the evidence does not reflect that the Veteran has Morton's disease. DC 5280 is not for application as the evidence does not reflect that the Veteran has had bunions operated on, or that they are clinical diagnosed as being severe (equivalent to amputation of the great toe). As for pain, the current 30 percent rating under DC 5276 encompasses pain and to separately rate pain under DC 5284 would be pyramiding, the evaluation of the same manifestation under different diagnoses, which is not permissible. 38 C.F.R. § 4.14. 

As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54- 56 (1990).


ORDER

Entitlement to an increased rating for bilateral pes planus with chronic plantar fasciitis and right plantar spur, status post right plantar fasciectomy and left plantar fascia release with scars, currently evaluated as 30 percent disabling, is denied.


REMAND

The Veteran's service-connected low back strain disability is evaluated as 10 percent disabling under DC 5237.

The Veteran underwent a VA examination in December 2016. With consideration of recent case law, the Board finds that the December 2016 VA examination report is inadequate for rating purposes. See Correia v. McDonald, 28 Vet. App. 158 (2016) (the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and non-weight-bearing (and, if possible, with range of motion measurements of the opposite undamaged joint)). The December 2016 VA examination report does not present all of the necessary findings. Specifically, the exam only shows that the Veteran has pain during active motion, it fails to indicate whether the Veteran experiences pain during passive motion of the thoracolumbar spine. Thus, a remand is necessary to provide the Veteran with a new VA examination and an opportunity to obtain adequate and updated findings concerning the severity of the back disability on appeal.

Accordingly, the case is REMANDED for the following action:

1. Please obtain updated VA and non-VA treatment records with respect to the low back.

2. Schedule the Veteran for an examination to determine the severity of his service-connected low back strain.

The examiner should specifically test any pertinent ranges of motion in active motion, passive motion, weight-bearing, and non-weight-bearing.

If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why that is so.

3. Following completion of the above, readjudicate the issue of entitlement to an initial rating in excess of 10 percent for a low back strain. If the benefit sought is not granted, issue a Supplemental Statement of the Case and afford the appellant and his representative an appropriate opportunity to respond. Thereafter, the case should be returned to the Board, as appropriate for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. C. Graham
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs